# FRANCIS v. ROBERTS et al.

No. 4648.   Decided September 13, 1928.   (272 P. 633.)
Rehearing Denied December 19, 1928.

*Le Roy B. Young,* of Ogden, and *Lewis Jones,* of Brigham City, for appellant.

*D. R. Roberts,* of Ogden, *W. J. Lowe,* of Salt Lake City, and *I. A. Huggins,* of Ogden, for respondents.

CHERRY, J. In November, 1901, and prior thereto, John P. Roberts was the owner of a tract of land in Box Elder county, of the area of about 90 acres. Appurtenant to the land was the right to use for one-third of the time the whole flow of Porter Springs, a natural stream of water with an average volume of about one cubic foot per second of time. Under apportionment with others Roberts had the right to the use of the stream for four days out of every twelve days during the entire year. In November, 1901, he sold the lower or western part of his land, consisting of about 41 acres, together with the water rights hereinafter mentioned, to the predecessor of the plaintiff. The deed by which the transfer was made contained a proper description of the land intended to be conveyed and described the water rights granted as follows: "With two days out of twelve days water right before and after the season for irrigating crops, said water from Porter Springs." Later the right and title of Roberts to the remainder of the land and water rights referred to came by mesne conveyances to the defendants. A dispute arising between the parties hereto concerning the exercise of their respective water rights, the plaintiff brought this action to determine the same. The plaintiff alleged and claimed the right to use the stream of water in question from October 1 of each year to June 21 following for two days out of every twelve days. Plaintiff further alleged an adverse use of the waters, as thus claimed, for

more than seven years prior to the commencement of the action.

The defendants pleaded and claimed a right to the use of all the waters in question during the irrigating season of each year, which season they averred varied from year to year between April 1 and November 1, depending upon rainfall and climatic conditions, and denied that plaintiff had any right to the use of any of the waters in question during such seasons.

A trial was had before the court and findings made to the effect that the plaintiff had not by adverse use acquired any right to the use of the waters in dispute during the periods when the same are needed by defendants for irrigation of crops; that the beginning of the irrigation by reason of the variation of the seasons could not be reasonably fixed; that the defendants were the owners of the right to use all of the waters in question during the season for the irrigation of crops, with the right to use it as early in each year as they deemed necessary and continuously thereafter until October 5 following without interference by the plaintiff. A decree was entered conformably to the findings that defendants were the owners of the right to use the waters described "during the season for irrigating farm crops, including hay, to begin said irrigation of said crops as early in each and every year as said defendants may deem necessary for the successful growing of crops" on the defendants' lands (describing them) and that said right to use said waters shall continue until October 5 of each and every year, and that the plaintiff be enjoined from the use of any of the waters during such periods.

From the decree the plaintiff has appealed. She complains that the court erred in denying her claim by adverse use, and further insists that her right to the use of the water, as described in the grant by Roberts to her predecessor, in view of the evidence, was by the decree too narrowly limited.

The claim of plaintiff that she acquired any rights by adverse use of the water in controversy cannot be sustained. The lands of the defendants are chiefly meadow and pasture lands. They are higher in elevation than the plaintiff's land, and the waste or surplus water from the irrigation of defendants' lands naturally flows down to the plaintiff's land. There was evidence that some water naturally arose on the defendants' lands. This would also flow to the plaintiff's lands. The evidence of plaintiff's use of the water during the seven-year period relied upon was generally to the effect that water ran down to plaintiff's lands pretty much the whole year round; that plaintiff or her predecessors took the water when it was not being used on the lands above; that usually it was not all claimed or used above earlier than the month of June; that the superior right of the defendants was recognized, but that as a matter of fact there was during the seven-year period a substantial quantity of water running through and off the defendants' lands which was used on the plaintiff's lands. There was nothing to show a hostility to or denial of the right of the owners of the upper lands to use the waters on their lands whenever they so desired, and they offered evidence of using it each season, sometimes commencing as early as April 1. From the whole of the evidence it is clear that the plaintiff's use of the water during any time which could be denominated the irrigation season was permissive and not adverse. The trial court properly dismissed and disregarded adverse use as a basis for the plaintiff's claim to the use of the water in question.

The remaining question presented involves an interpretation of the grant of water rights to the plaintiff's grantor. As before seen, the deed from Roberts, under which the plaintiff claims, describes the water right conveyed as "two days out of twelve days water right before and after the season for irrigating crops, said water from Porter Springs." When the conveyance was made the principal crop on the lands was natural meadow or wild hay. On the part re-

tained by Roberts a small area of about six acres was culti-
vated and planted to grain, potatoes, and alfalfa. Irrigation
was necessary for the meadow and hay lands, as well as
for the crops planted annually. It was fairly established by
the evidence that the crops planted annually did not require
irrigation and in fact were not irrigated until on or after
the first part of June of each year. The meadow and hay
lands required irrigation at an earlier period, varying with
the seasons, but not earlier than April 1. The principal con-
tention of the plaintiff and appellant is that the words
"before and after the season for irrigating crops," contained
in the description of water rights conveyed to her predeces-
sor in interest, must be construed to mean before and after
the season for irrigating crops planted annually; that the
word "crops," used in the deed, means emblements or what
is known as fructus industriales (the product of annual
planting or cultivation), as distinguished from fructus nat-
urales (crops that are produced by the powers of nature
alone), and that as thus construed the plaintiff's right to
use the water in question would extend in point of time
to any and all times except the period in each year between
June 1 and October 5.

It is very doubtful whether a crop produced by artificial
irrigation and harvested annually could be properly classi-
fied as fructus naturales. But it is wholly unneces-
sary in this case to consider or determine that ques-       ■
tion. The distinction between fructus industriales
and fructus naturales is not important here, for both are
comprehended within the term "crops." 17 C. J. 378; *State
v. Crook*, 132 N. C. 1053, 44 S. E. 32. That distinction
is chiefly important as relating to whether the crop is real
or personal estate (37 C. J. 380), and in this case that ques-
tion is immaterial.

When the deed in question was executed transfering the
right to use a portion of the waters of the spring "before
and after the season for irrigating crops," the grantor con-

fessedly had the right to the use of the waters for his aliquot portion of the time, both during such season and the remainder of each year. At that time the principal product of his land was hay produced from natural meadow by the aid of artificial irrigation. From this situation and the language employed in the deed we think it quite apparent that the parties intended a transfer of the right to use water during the period only when it was not required or used for the irrigation of the crops which the grantor had prior thereto been irrigating and producing upon his land. And the word "crops" contained in the deed, in view of the circumstances, was used in its general or popular sense, and included the crop of hay annually irrigated and produced upon the land as well as the other crops referred to. We see no reason whatever why the term "crops" as used in the deed should be given a restricted or technical meaning. To do so would, in our opinion, defeat the intention of the parties to the deed. The trial court correctly disposed of this question.

Appellant complains of the decree because it is indefinite with respect to fixing the time when the "season for irrigating crops" begins, but provides that defendants may begin to use the water for irrigation as early in each year "as said defendants or their successors in interest may deem necessary for the successful growing of crops," etc.

We think this a matter of importance, and that the decree in this respect is indefinite and erroneous to the prejudice of the plaintiff. While the court properly found, under the evidence, that on account of the seasonal variation of rainfall and climatic conditions it was impossible to determine a fixed date for the commencement of the season for irrigating crops for every year, the evidence was conclusive to the effect that in no season was irrigation necessary or employed upon the defendants' lands before April 1. The decree should therefore have fixed this date as the earliest time in any season from which the use of the water in controversy by the defendants for irrigation should begin.

In this respect the decree should be modified by a limitation that defendants' right to use the water in question for irrigation of crops shall not begin in any season earlier than April 1. In all other respects the judgment is affirmed. The cause is remanded, and the district court is directed to modify the decree accordingly. No costs allowed to either party.

THURMAN, C. J., and STRAUP, HANSEN, GIDEON, JJ., concur.